ROBERT J. ROSATI, SBN 112006
robert@erisalg.com
RAQUEL BUSANI, SBN 323168
raquel@erisalg.com
6485 N. Palm Avenue, Suite 105
Fresno, California 93704
Telephone: 559-478-4119
Telefax: 559-478-5939

Attorneys for Plaintiff,
CHANCHALA JOSHI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| CHANCHALA JOSHI,<br><br>               Plaintiff,<br><br>vs.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,<br><br>             Defendant. | CASE NO.<br><br>**COMPLAINT** |

Plaintiff, Chanchala Joshi ("Plaintiff" or "Joshi") alleges as follows:

## <u>JURISDICTION</u>

1.      Plaintiff's claims for relief arise under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1) and (a)(3).  Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America.  29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

## VENUE

2.      Venue is proper in the Central District of California because Plaintiff is a resident of Irvine, in the County of Orange, California, and was a resident there when Defendant made the adverse determination at issue regarding the terminating her long-term disability ("LTD") benefits and denied her appeal of that adverse determination.  Therefore, 29 U.S.C. section 1132(e)(2) provides for venue in this Court.  Venue is proper in this Court's Southern Division.

## PARTIES

3.      Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1000(7), of the long-term disability (Welfare) plan of Infosys Limited ("The Plan") and thereby entitled to receive benefits therefrom. Plaintiff is a beneficiary because she was an employee of a participating employer of The Plan, which was established to provide benefits, including LTD benefits, to specified employees.

4.      Defendant, Hartford Life and Accident Insurance Company ("Hartford") is a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  Hartford is engaged in the business of insurance and is authorized to transact insurance in California. Aetna Life Insurance Company issued a group long term disability policy, Group Policy Number GP-883499-GI, to Infosys Limited for the benefit of Infosys-related employees ("The Policy").  Aetna sold its group disability line of business, including its responsibility for The Policy and Joshi's claim, to Hartford, which thereby became responsible for Joshi's claim for LTD benefits.

## FIRST CLAIM FOR RELIEF

5.      Joshi does not have The Policy, but does have the Certificate, issue date March 27, 2018, a true and correct copy of which is attached hereto as Exhibit A.

A.      According to the Certificate, the Certificate is part of the group

policy.

   B. The Policy was issued in the State of Texas.

   C. The Certificate does not have a choice of law provision; it does have a conformity with law provision which states: "This certificate is governed by applicable federal law and the law of Texas."

6. Review of this claim is de novo:

   A. The Certificate does not include any reservation of discretion to Aetna, Hartford or anyone else.  Joshi is informed and believes, based on the contents of the Certificate, that The Policy does not include a reservation of discretion.

   B. Any such reservation discretion to Aetna, Hartford or anyone else in any plan document is null and void and contrary to law pursuant to both Texas law, where The Policy was issued, and California law, where Joshi resides.

   C. Pursuant to California Insurance Code 10110.6 any reservation of discretion in The Policy, the plan, or any plan document is null, void, and unenforceable.

   D. Texas bans discretionary clauses from any "forms."  Tex. Admin. Code § 3.1203.  A "form" includes any (a) policy, (b) contract, (c) certificate, (d) application attached or required to be attached to a policy, contract or certificate, or (e) rider or endorsement attached or used in connection with the policy contract, or certificate.  Tex. Ins. Code § 1701.002.  The Texas ban on discretionary clauses sets forth the specific circumstances in which it applies as follows:

> (b) Except as specified in subsections (c) and (d) of this section, this subchapter applies to forms offered, issued, renewed, or delivered on or after June 1, 2011, including forms that include premium waiver provisions based on upon a disability determination.

(c) For forms that include disability income protection coverage providing for period payments during disability due to sickness and/or accident, whether provided through a policy, certificate, or rider, this subchapter applies to forms offered, issued, renewed, or delivered on or after February 1, 2011.

(d) For forms issued or delivered prior to the effective date of this subchapter that do not contain a renewal date, this subchapter applies on or after the effective date of any rate increase applicable to the form or any change, modification, or amendment of the form occurring on or after June 1, 2011.

28 Tex. Adm. Code § 3.1201.

E.      Therefore, any reservation of discretion in The Policy, the plan, or any plan document, is null, void, invalid and unenforceable.

7.      The Certificate provides that the test of disability from the date the claimant first became disabled and until monthly benefits are payable for 24 months, is that the claimant cannot perform the material duties of her own occupation solely because of illness, injury, or disabling pregnancy-related condition and the claimant's earnings are 80% or less of her adjusted pre-disability earnings.  After the first 24 months of disability that monthly benefits are payable, the claimant must be unable to work at a reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition.

8.      The Certificate defines illness as "a pathological condition of the body that presents a group of clinical signs and symptoms and laboratory findings peculiar to the findings set the condition apart as an abnormal entity differing from other normal or pathological body states."

9.      The Certificate defines Own Occupation as "the occupation you are routinely performing when your period of disability begins.  You occupation will be viewed as it is normally performed in the national economy instead of how it is performed for your specific employer; or at your location or worksite; and without regards to your specific reporting relationship."

10.     Material duties are defined by The Certificate as "duties that are normally needed for the performance of your own occupation and cannot be reasonable left out or change.  However, to be at work more than 40 hours per week is not a material duty."

11.     Joshi was hired by Infosys is effective April 6, 2015.  Joshi was employed as a Project Manager, Information Technology.  In that capacity she was required to "plan for and ensure quality and timeliness of activities related to design, build and implementation of work product."  She was required to "participate in requirements elicitation, solicitation, analysis of architecture, create and review design and contribute to activities relating to estimation, staffing analysis & solutioning and risk planning."  She was required to "act as a mentor and support the project team in developing optimized high quality deliverables."  She was to "be part of a learning culture, where teamwork and collaboration are encouraged, excellence is rewarded, and diversity is respected and valued."

12.     Joshi became disabled and stopped working on August 26, 2019.  Joshi became disabled by anxiety, depression, and orthopedic conditions including: cervicalgia, sciatica lumbosacral spine bilateral lower extremities; left chondromalacia patella; and neuroma incontinuity left digital nerve between the long and ring fingers.

13.     Joshi also submitted three applications for adjudication of Workers Compensation claims with the California division of Workers Compensation, Workers Compensation Appeals Board in 2019.  At various times Joshi informed Aetna and Hartford that she had applied for Workers Compensation benefits.  Hartford independently learned that Joshi had applied for Workers Compensation benefits on March 21, 2020, when it received a report, which it requested, from an ISO ClaimSearch, which referenced Joshi's California Workers Compensation claims with dates of February 9, 2019, August 23, 2019, and August 30, 2019.

14.     Joshi initially filed for and ultimately received Short Term Disability benefits through the Infosys Plan from Aetna, Hartford's predecessor-in-interest. By letter dated February 28, 2020, Aetna informed Joshi that she was at the end of her STD claim and that on December 1, 2019, she had reached the maximum STD benefits offered by Infosys Limited.  The letter further explained that Aetna was reviewing Joshi's claim for long term disability benefits.   Thereafter Hartford took over responsibility for Joshi's LTD claim.

15.     At the beginning of its review of Joshi's LTD claim Hartford conducted a "triage" and concluded that "no likelihood employee qualified to perform occupations other than employee's own occupation due to occupational complexity and/or earnings potential requirements; consider obtaining complete cognitive and physical requirements of employee's own occupation; focus on clarifying function for own occupation; expected test change recovery rate: 3%-13%. "Test change" means the change in definition from being disabled from the claimant's own occupation to being disabled from any occupation, which occurs after the claimant has received 24 months of LTD benefits.

16.     Joshi is informed and believes and thereon alleges that "expected test change recovery rate: 3%-13%" means that at the time Joshi's application for LTD benefits was initially reviewed by Hartford, it projected that she only had a 3-13% likelihood of recovering and returning to work before the end of her own occupation period of disability - - i.e., before she received 24 months of LTD benefits.

17.     The Certificate provides that LTD benefits are payable after the Elimination Period is over.  The Elimination Period, as set forth in the "Schedule of Long Term Disability Benefits," is the first 90 days of a period of disability.

18.     Joshi's last day of work was August 26, 2019; therefore, her Long Term Disability benefits start date was November 24, 2019, and the "test change" date was November 24, 2021.

19.    By letter dated March 23, 2020, Hartford notified Joshi that it had approved her LTD benefits starting November 24, 2019.  Although that letter does not explain Hartford's rationale for approving the LTD benefits at that time, a claim note dated March 23, 2020, prepared by Hartford's Katherine Leonard explains "There is evidence that the [claimant] was functionally impaired which prevented her from sustained activity on a [full-time] basis.  She reportedly was struggling with sleep, anxiety, and depression.  She was recommended to start medication.  She had panic attacks, circumstantial thinking . . . .  [Her primary care physician] Dr. Porch indicated that she might be able to seek a job, but would not be able to work in the same field that she was previously working [due to] her [symptoms].  She could complete a menial job, but not one for somebody with a master's degree."  Leonard also noted "Claimant is unable to perform the duties of her own occupation as she is anxious is interacting with people, which is a duty of her own occupation."

20.    One of Joshi's treating doctors, R. Dennis Porch, routinely submitted documentation substantiating Joshi's inability to work, including:

A.    A September 9, 2019, evaluation, assessment and diagnoses.

B.    On October 16, 2019, reevaluation, assessment and diagnoses;

C.    A March 26, 2020, Attending Physician Statement on a form provided by Hartford, providing diagnoses, and assessment, a description of symptoms, and stating in response to Hartford's questions that Joshi was impaired from working.

D.    On June 4, 2020, Hartford sent Dr. Porch a detailed questionnaire concerning Joshi; Dr. Porch completed the questionnaire and returned it on June 5, 2020, stating that Joshi is "unable to return to work" and otherwise answering Hartford's questions.

21.    Hartford obtained a "Physician Review" dated July 20, 2020, from Jeremy Hertza.  Dr. Hertza concluded that: Joshi had functionally impairing

psychiatric conditions; Joshi's reports and those of her doctors are "consistent" across the records; Joshi's treatment was appropriate for her identified impairments; Joshi should be reevaluated in September, 2020; and there were no inconsistency based on the medical review.

22.   Dr. Porch completed another Hartford provided  Attending Physician Statement and submitted it on September 1, 2020, listing treatment dates in June, July, and August, 2020.

23.   On October 16, 2020, Hartford's Katherine Leonard called and wrote Joshi stating that Hartford needed additional information from her doctors to extend her disability benefits, specifying "we need all records. . . . ."

24.   By letter dated November 17, 2020, signed by Katherine Leonard, Senior Ability Specialist, Hartford notified Joshi that her benefits were terminated as of September 9, 2020, because her doctors have not provided records which Hartford requested.   The letter quoted a "Proof of Loss Standard" concerning when a claim should be terminated, but which standard is not in The Policy.  That letter stated "there is no current medical documentation in your claim file supporting ongoing restrictions and limitations in normal work activity."  The letter invited Joshi to appeal the determination.  The letter did not explain to Joshi what materials she needed to submit to support her appeal.

25.   Although not referenced or included in Joshi's LTD claim file maintained by Hartford, on November 20, 2020, Joshi was evaluated as part of her Workers' Compensation claim by Dr. Sterling B. Mutz, Board Certified Orthopedic Surgeon, who provided a panel Qualified Medical Evaluation which was served on January 4, 2021.

26.   By letter dated January 11, 2021, Joshi submitted an appeal of the termination of her LTD benefits explaining that the information provided by Dr. Porch was adequate for Ms. Leonard to make to her decision, but Ms. Leonard kept pushing for more information, with a very vague and generic statement.  'We need

all records'." Joshi also provided a January 8, 2021, Attending Physician Statement by Dr. Porch, which explained that Joshi continued to treat with Dr. Porch, was still unable to return to work, and that her target date for return to work was January 1, 2022.  Joshi did not submit Dr. Mutz' report to Hartford then or later.

27.    In response to Joshi's appeal Hartford obtained a "Physician Review" dated March 9, 2021, from Dr. Nesreen Malik.  Dr. Malik's "Physician Review" does not identify the records she was provided for review but does reference a few records from Dr. Porch and from Dr. Park.  Dr. Malik was asked whether the medical evidence substantiated "severe" "limitations" and whether, if impairments were evident, the treatment were clinically appropriate.  Dr. Malik was not provided information about Joshi's job or job duties.  Dr. Malik was not asked and did not express an opinion as to whether Joshi could perform the material duties of her own occupation.

28.    On March 19, 2021, Hartford's Daniel Zittlow, entered a note to Joshi's LTD claim file under the heading "Financial" concerning Joshi's Workers' Compensation claim and noting "SLO believes unlikely to obtain our full value of the lien" and expressing concern that "no double recovery occurs. . . ."

29.    By letter dated March 24, 2021, Hartford's Katherine Leonard wrote Joshi, in part, that "because the medical information we have received to date does not indicate objective impairments that would preclude you from returning to work, we are unable to reinstate your benefits and your claim remains denied."  The letter states the evidence "does not suggest global functional impairment" "the medical information submitted does not show evidence of impairments so severe to quickly return to work. . . ."  The letter did not explain what was meant by "severe impairments" or "impairments' by "global functional" impairment or why such proof was required by The Policy.  The letter also mischaracterized the medical evidence.  The letter invited Joshi to appeal.

30.     On June 29, 2021, Joshi submitted two letters to Hartford which included a detailed evaluation by Dr. Colleen H. Daniel, who reasoned, in part: which explains that that likely Joshi's symptoms significantly interfere with her vocational and social functioning, that Joshi exhibited significant symptoms; and that Joshi would need accommodations to return to work.  Joshi also wrote that her medication dosage had been increased, she continued with prescribed treatment, and that she also had physical disabilities.

31.     By letter dated August 4, 2021, signed by Hartford's Katherine Leonard, Hartford wrote that Joshi no longer met the own occupation test of disability, repeated the conclusions from her March 24, 2021, letter, and explained "because the medical information we have received to date does not indicate objective impairments that would preclude you from returning to work, we are unable to reinstate your benefits.  "The letter referenced "guidelines" not in The Policy that were relied upon in making the determination and "policies and procedures" in place, also not in The Policy, but did not provide any such guidelines or policies and procedures to Joshi.  The letter did not explain what it meant by "impairments so severe" or why a "higher level of care" was required by The Policy; or why she was required to present evidence of "global functional impairment" or what that means; or explain what are "objective impairments" or why such evidence was required by The Policy.  The letter once again invited Joshi to appeal.

32.     Joshi submitted a second appeal.  By letter dated August 6, 2021, signed by Hartford's Michelle Kennedy, Hartford acknowledged the receipt of Joshi's second appeal.

33.     In response to Joshi's second appeal Hartford obtained a "Physician Review" by Dr. Edan Critchfield dated August 25, 2021.  Dr. Critchfield's report lists the records he reviewed, which records did not include Joshi's job description or The Policy.  Dr. Critchfield agreed with Joshi's treating doctors' diagnoses;

agreed that the treatment Joshi received was appropriate; noted that Joshi had had mild to moderate improvement over her initial symptoms; noted that Joshi continued to be able to drive, relying upon that fact to support the conclusion that Joshi was not functionally impaired; wrote in response to Hartford's question as to whether there were global impairment that "global functional impairment necessitating activity restrictions/limitations or otherwise preventing reliable and sustained full-time employment and that the symptoms were not "of the severity" that would  result in "global functional impairment."

34.     In response to Joshi's second appeal Hartford also obtained a "Physician Review" dated August 25, 2021, from Dr. Jeffery B. Danzig.  Dr. Danzig opined that "there were no objective or functional impairments" Dr. Danzig initially reported that Joshi's subjective complaints of pain were credible and consistent; he was asked to reconsider by Hartford and he thereafter issued a "corrected" report dated August 31, 2021, in which he asserted that Joshi's subjective reports of pain were not credible and consistent.  Dr. Danzig did not have Dr. Mutz' report to review because Joshi never submitted it to Hartford.

35.     By letter dated September 2, 2021, Hartford transmitted Dr. Critchfield's and Dr. Danzig's reports to Joshi, inviting her to comment on them.

36.     By letter dated  September 17, 2021, Joshi responded by explaining that her understanding of functional impairment is when one is not able to deliver the role she last performed, which was IT/Software Technical Project Manager and that she could not so and she provided and Attending Physician Statement signed on September 9, 2021, who provided that Joshi could return to work in November, 2022.

37.     By letter dated September 27, 2021, signed by Hartford's Michelle Kennedy, Hartford denied Joshi's second appeal, in part asserting that Joshi's doctors "did not provide objective findings and that "we must rely on written medical evidence document functional impairment, and such medical evidence that

must support of level of impairment that would normally preclude someone from performing their own occupation. . . . in order to qualify for and receive disability payment, your condition must support functional impairment as noted above."  The letter referenced and stated Hartford relied upon "guidelines," which it purportedly quoted, and standards by which all claims and appeals are to be adjudicated.  The letter also notified Joshi that if she did not agree with this final appeal decision, she could file a lawsuit.

38.     Joshi performed all conditions precedent required to be performed by her under the terms of The Policy, including but not limited to:

A.     She is and was eligible for benefits.

B.     She was disabled throughout the Elimination Period.

C.     She submitted "proof" as required by The Policy in a timely fashion.

D.     She applied for applicable "Other Income" benefits.

39.     ERISA section 503, 29 U.S.C. section 1133 provides:

"In accordance with regulations of the Secretary, every employee benefit plan shall–

(1)     provide adequate notice in writing to any participant, beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial, written in a manner calculated to be understood by the participant, and

(2)     afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

40.     Defendant was required to provide Plaintiff a full and fair review of her claim for benefits pursuant to 29 U.S.C.  §1133 and its implementing Regulations.  Specifically:

A.      29 U.S.C. §1133 mandates that, in accordance with the Regulations of the Secretary of Labor, every employee benefit plan, including defendant herein, shall provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant and afforded a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by an appropriate named fiduciary of the decision denying the claim.

B.      The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. §1133.  These Regulations are set forth in 29 C.F.R. §2560.503-1 and provide, as relevant here, that employee benefit plans, shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed reasonable only if:

i.      Such procedures comply with the specifications of the Regulations.

ii.      The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

iii.      Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information

necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

iv.     The Regulations further provide: "In the case of a plan providing disability benefits, the plan must ensure that all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of the persons involved in making the decision. Accordingly, decisions regarding hiring, compensation, termination, promotion, or other similar matters with respect to any individual (such as a claims adjudicator or medical or vocational expert) must not be made based upon the likelihood that the individual will support the denial of benefits."

v.     Defendant is required to provide a full and fair review of any adverse determination which includes:

a.     That a claimant shall be provided, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to the claimant's claim for benefits.

b.      A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the plan concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination.

c.      The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination;

d.      The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

e.      The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the

plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

        f.      The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

        g.      The Regulations further provide that before a plan can issue an adverse benefit determination on review of a disability benefit claim, the plan administrator shall provide the claimant, free of charge, with any new or additional evidence considered, relied upon, or generated by the plan, insurer, or other person making the benefit determination in connection with the claim as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided to give the claimant a reasonable opportunity to respond prior to that date.

        h.      The Regulations further require that such adverse decision include discussion of the decision, including an explanation of the basis for disagreeing with or not following:

        *      The views presented by the claimant to the plan of health care professionals treating the claimant and vocational professionals who evaluated the claimant;

        *      The views of medical or vocational experts whose advice was obtained on behalf of the plan in

connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination; and

*      A disability determination regarding the claimant presented by the claimant to the plan made by the Social Security Administration.

41.   Hartford denied Joshi a full and fair review of her claim for benefits because:

A.      Joshi is informed and believes that Hartford does not have claims procedures which contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions had been applied consistently with respect to similarly situated claimants because when terminating Joshi's LTD benefits and denying her appeals of that termination, Hartford never applied the terms set forth in The Policy to her claim but instead: (i) utilized standards and criteria not in The Policy to (a) deny her first appeal by letter dated March 24, 2021: lack of evidence of impairments so severe to preclude a return to work. . . ;" severity of your symptoms does not require a higher level of care. . . ;medical evidence "does not suggest global functional impairment. . .." lack of "objective impairments; (b) deny her first appeal again by letter dated August 4, 2021: same reasons as those set forth in the March 24, 2021; and (c) to deny Joshi's second appeal by letter dated September 27, 2021; medical evidence must "document functional impairment. . . .must support a level of impairment that would normally preclude someone from performing their own occupation . . .. "Reported pain and endurance cannot be relied upon as an indication of functional impairment, since perception of pain and

endurance may be affected by individual tolerance, motivational or psychological factors."; (ii) utilized "guidelines" and "practices and procedures" not in The Policy as alleged in Paragraphs 31 and 37; (iii) solicited and relied upon medical reviews by Drs. Malik, Critchfield, and Danzig, which utilized standards and criteria not in The Policy and inconsistent with The Policy's standards and criteria as alleged in Paragraphs 27, 33. and 34.

B.    Hartford never provided to Joshi a description of additional material or information necessary for her to perfect her claim or an explanation of why such material or information was necessary.  Also, in its September 27, 2021, letter Hartford asserted for the first time in the claim that "Medical care to date does not appear appropriate and consistent for your musculoskeletal. . .  complaints.  Specifically, you have not provided evidence of treatment with an orthopedist. . . ."  Had Hartford previously explained to Joshi that it needed or required evidence of appropriate and consistent care for her musculoskeletal complaints, she would have and could have provided Dr. Mutz' report – Dr. Mutz is an orthopedic surgeon – and the records Dr. Mutz' reviewed and referenced in his report from different chiropractors, a medical doctor, an occupational medial specialist, and a pain medication specialist.  Because Hartford did not comply with the Regulations Joshi did not provide to Hartford supporting, relevant evidence, including Dr Mutz' report, the records Dr. Mutz' cited and relied upon in that report, or other records.

C.    Hartford provided no documentation demonstrating that it ensured that all claims and appeals for disability benefits are adjudicated in a matter to design to ensure the independence and impartiality of the person involved in making the decision.

D.    When Joshi, through counsel, by letter dated November 4, 2021, requested copies of all documents, records, and other information relevant to Joshi's claim for benefits she specifically requested all documents which "demonstrates compliance with the administrative processes and safeguards required pursuant to paragraphs (b)(5) of [29 C.F.R.] Section 2560.503.-1; or [which] constitutes a statement of policy or guidance with respect to the plan concerning the benefits. . . I also request free of charge a copy of any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the adverse determination." But Hartford failed and refused to produce such documents. Specifically, it did not provide to Joshi any documents which: (i) demonstrate compliance with the administrative processes and safeguards required pursuant to the regulations ;or (ii) the documents which constitute rules, guidelines, protocols, or other written criterion that were relied upon concerning the denied benefit despite explicitly relying on the same in its letters to Joshi, as referenced in Paragraphs 31 and 37, above.

42.    Hartford's termination of Plaintiff's LTD benefits was arbitrary and capricious, an abuse of discretion, not supported by substantial evidence, and a violation of the terms of The Policy:

A.    Defendant did not provide Joshi a full and fair review of her claim for benefits and violated applicable claims Regulations as alleged in Paragraphs 41 and 42.

B.    The evidence demonstrates that Joshi is, and all relevant times has been, disabled under the terms of The Policy and therefore entitled to continued LTD benefits from Hartford.

C.    Joshi is and was suffering from an illness as that term is defined by The Policy.

D.     Joshi earned no money during the relevant period, i.e., from September 10, 2020, forward.

E.     Hartford never evaluated and never asked its reviewing doctors to evaluate whether Joshi could perform the material duties of her own occupation: it never inquired what those duties were; it never provided Joshi's job description  or an explanation of her duties to its reviewing doctors; it never asked its reviewing doctors to evaluate if Joshi could perform the material duties of her own occupation. Instead Hartford's employees posed questions to and obtained answers from its reviewing doctors concerning issues and standards inconsistent with and contrary to the requirements of The Policy:

i.     Hartford asked Dr. Malik whether the medical evidence substantiated "severe" limitations and whether "impairment" was evident.

ii.     Hartford asked Dr. Critchfield, in part: (1) what "restrictions and limitations" are supported; (2) whether was evidence of "global impairment"; (3) whether Joshi had "sustained functional capacity for the period 9/09/2020 forward?"

iii.     Hartford asked Dr. Danzig about the effect of the records he was provided on Joshi's  "overall functional capacity" and he responded concerning her "functional impairment."

iv.     Hartford asked its reviewing doctors what restrictions and limitations were supported by the records. "Restrictions and limitations" are not a requirement of the Policy. The proper question under The Policy is whether there was a change in Joshi's functional capacity that prevents her from performing at least one of the material duties of her regular occupation.  While that could be a restriction or a limitation, it does not have to be.

v.      Hartford also asked its doctors about "impairments." But Hartford did not define that term and that term ambiguous.  "Impairment" is defined by the American Medical Association Guides to the Evaluation of Permanent Impairment, 5th Edition (2000), as "a loss, loss of use, or derangement of any body part, system, or function."  The AMA's Guides to the Permanent Impairment 6th Edition (2008), defines it as "a significant deviation, loss, or loss of use of any body structure or body function in an individual with a health condition, disorder, or disease."  The Merriam-Webster Dictionary defines impairment as "the act of impairing something or the state of condition of being impaired: diminishment or loss of function or ability."  There is no evidence of what Hartford meant when it asked its reviewing doctors about impairment.  There is no evidence about what the doctors meant when they answered.  Hartford and its reviewing doctors should have used the Policy language in order to avoid the ambiguity.

F.      Hartford disregarded the disabling effects of pain inconsistent with The Policy, by disregarding reported pain based on factors not specified in The Policy, as more fully alleged in Paragraph 41.A.

43.     Joshi has exhausted all internal remedies required by the terms of The Policy and by the terms of ERISA.

44.     An actual controversy has arisen and now exists between Plaintiff and Defendant with respect to whether Plaintiff is entitled to LTD benefits under The Policy.

45.     Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that Defendant is obligated to pay her LTD benefits under The Policy, retroactive to the first day

her benefits were terminated, for as long as she is entitled to receive LTD benefits under the terms of The Policy.

46.     A judicial determination of these issues is necessary and appropriate this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote judicial efficiency.

47.     As a proximate result of Defendant's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of The Policy.  Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

## SECOND CLAIM FOR RELIEF

(For Declaratory Relief or Other Appropriate Equitable Relief)

48.     Plaintiff incorporates by reference paragraphs 1 through 47, inclusive, of this Complaint.

49.     29 U.S.C. §1132(a)(3) authorizes a participant or beneficiary of an ERISA plan, such as Joshi, to bring a civil action to enjoin any act or practice which violates any provision of subchapter 1, 29 U.S.C. §§1001 – 1191, or the terms of the plan, or to obtain other appropriate equitable relief to address such violations or to enforce any provisions of subchapter 1 or the terms of the plan.

50.     Hartford acted in a fiduciary capacity when it investigated and decided to terminate Joshi's LTD benefits and when it investigated and decided to deny Joshi's appeals of that termination.

51.     As a fiduciary, Hartford was obligated: to discharge its duties with respect to The Plan solely in the interest of its participants and their beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and to defray reasonable expenses of administrating the plan; to do so with the care, skill, prudence, and diligence under the circumstances then prevailing

that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and to do so in accordance with the documents and instruments regarding the plan insofar as such documents and instruments are consistent with the provisions of the relevant subchapters of ERISA.

52.     In the course of investigating and deciding Joshi's claim and appeals:

A.     Hartford failed to act solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defray reasonable expenses of administering The Plan with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims by.

B.     Hartford failed to discharge its duties with respect to The Plan solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits to the participants and their beneficiaries and defray any reasonable expenses of administering the plan with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims by.

53.     In the course of investigating and deciding Joshi's claim and appeals, Hartford engaged in acts and practices in violation of ERISA subchapter 1 as follows:  Hartford failed and refused to provide a full and fair review as required because it did not comply with 29 C.F.R. §2560.503-1, as more fully described in Paragraphs 41 and 42 herein.  Therefore, Hartford should be equitably:

A.     Required to provide the guidelines and practices and procedures referenced in paragraphs 31 and 37, but which Hartford improperly failed and refused to provide, as alleged in paragraph 41.D.

B.      Precluded from relying upon the reviewing doctors (Malik, Critchfield, Danzig) reports in future decisions regarding Joshi's claim because those reports do not address the issues presented by The Policy.

C.      Required to utilize the terms and conditions set forth in The Policy to evaluate Joshi's prospective claims for benefits and precluded from utilizing the non-policy terms, conditions, and standards, as it did, as described in paragraphs 24, 29, 31, 37, 41, and 42.

54.     As a matter of custom and practice Hartford continues to engage in the acts and practices alleged in Paragraphs 41 and 42.

55.     Joshi is potentially entitled to LTD benefits from Hartford until her normal Social Security Retirement age of 67 in May, 2034.  Unless Hartford is equitably precluded from engaging in the acts and practices described in Paragraphs 41 and 42, and unless Joshi is provided other appropriate equitable relief, as sought herein  Hartford will continue to engage in the acts and practices described in Paragraphs 41 and 42 with reference to Joshi's claim once her benefits are reinstated.

## THIRD CLAIM FOR RELIEF

(For Declaratory Relief or other Appropriate Equitable Relief Concerning Any Offset or Reduction of Plaintiff's LTD Benefits Due to her Receipt of Workers' Compensation Benefits)

56.     Plaintiff incorporates by reference paragraphs 1-52, inclusive, of this complaint.

57.     Notwithstanding any provision in The Policy, the Certificate, or The Plan to the contrary, Hartford's exclusive remedy for any claimed overpayment by Aetna of STD benefits or by Hartford of LTD benefits for the period through September 9, 2020,  as a result of Joshi's receipt of California Workers' Compensation benefits is subject to the sole and exclusive remedy provisions set forth in California Labor Code Section 3600 et seq., especially Sections 4903 and

4903.5, which require Hartford to file a lien with the California Workers' Compensation Board to recover any such claimed overpayment, and therefore Hartford may not to reduce future benefits determined to be owed by Hartford to Joshi by the amount of such claimed overpayment.

WHEREFORE, Plaintiff prays judgment as follows:

1.    For declaratory judgment against Hartford ordering Hartford to pay to Joshi LTD benefits from September 10, 2021, and continuing until and unless she is determined to no longer be entitled to such benefits under The Policy.

2.    For attorney's fees incurred in this action.

3.    For costs of suit incurred herein.

4.    For prejudgment interest on unpaid benefits.

5.    For such other and further relief as the Court deems just and proper.

6.    For declaratory judgment or other appropriate equitable relief pursuant to 29 U.S.C. §1132(a)(3):

    A.    Requiring Hartford to provide the guidelines and practices and procedures it referenced it relied upon in its letters to Joshi, to Joshi.

    B.    Prohibiting Hartford from utilizing the reports of Drs. Malik, Critchfield and/or Danzig concerning Joshi's claim for LTD benefits in future claims decisions.

    C.    Requiring Hartford to utilize the terms and conditions set forth in The Policy to evaluate Joshi's claim for benefits in the future and prohibiting it from utilizing the non-Policy terms, conditions, and standards it used to date.

7.    For a declaratory judgment or other appropriate equitable relief pursuant to 29 U.S.C Section 1132 (a)(3) prohibiting Hartford from offsetting or reducing any LTD benefits ordered paid  to Joshi for the period from September 10, 2020,  forward by the amounts of any claim overpayments incurred for the period through September 9, 2020, based on Joshi's receipt of Workers' Compensation

benefits for that time because Hartford's sole and exclusive remedy for any such claimed overpayment is to file a timely lien with the California Workers Compensation Appeals Board.

Dated:      December 16, 2021

*/s/ Robert J. Rosati*

ROBERT J. ROSATI, Bar No.:  112006

Attorney for Plaintiff,
CHANCHALA JOSHI